IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **JOHN RICHARD SMITH #2037971** | § | |
| | § | |
| **V.** | § | **W-17-CA-144-RP** |
| | § | |
| **DR. DOUGLAS GREEN, et al.** | § | |

## ORDER

Before the Court are Defendants Green, Marcum, Pollard, Smith, and Whitt's Motion for Summary Judgment (#20) and supplement (#26), Defendant Armstrong's Motion for Summary Judgment (#21) and supplement (#27), Plaintiff's Responses (#22, 24) and supplemental responses (#30, 31). Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

## STATEMENT OF THE CASE

At the time he filed his complaint pursuant to 42 U.S.C. § 1983, Plaintiff was confined in the Texas Department of Criminal Justice - Correctional Institutions Division at the Hughes Unit. Plaintiff alleges Defendants were deliberately indifferent to his medical needs because they failed to treat him for an injury to his Achilles tendon. He alleges this led to injuries in other parts of his leg. Plaintiff seeks transfer to a smaller unit[1] and damages for pain and suffering.

---

[1] It appears Plaintiff has now been transferred to a smaller unit based on the change of address received by the Court on December 1, 2017. Thus, this request is moot.

## DISCUSSION AND ANALYSIS

### A. Factual Background

Plaintiff indicates he tore the Achilles tendon in his left foot on April 4, 2014, while he was detained at the Harris County Jail. He was eventually transferred to TDCJ custody and was examined at the Holliday Unit on January 6, 2016. Def. Ex. A (#26-2) at 8. Plaintiff had a prescription for pain medication for his ankle at the time of his intake at the Holliday Unit. Def. Ex. B (#26-3) at 35. At intake, however, Plaintiff indicated he had no health care complaints. *Id.* X-rays were taken of Plaintiff's foot on January 28, 2016, which indicated no significant damage to his left ankle at that time. *Id.* at 41. Plaintiff sought to have surgery on the ankle, however, and was wearing a removable boot, but was informed that it would be elective surgery based on the age of the alleged tendon tear (nearly two years prior). *Id.* at 43. Plaintiff was also referred to an orthopedist at that time, however the scheduling department questioned the referral, noting that, while Plaintiff reported a history of injury, his present examination was normal. *Id.* at 63.

Plaintiff was transferred to the Hughes Unit on March 9, 2016. At that time he received a dental examination, mental health examination, and a general medical examination. *Id.* at 30-38. No need for immediate follow-up was noted, and Plaintiff continued with a prescription for pain medication. *Id.* at 33. On March 23, 2016, Plaintiff inquired about his referral to an orthopedist and was informed by Defendant Whitt that his appointment had not yet been set. *Id.* at 29. On March 31, 2016, Plaintiff submitted a sick call request indicating that his pain medication was not adequate. *Id.* at 28. Plaintiff was scheduled for a medical visit in response to his request, but he failed to appear. *Id.* at 27.

Plaintiff was seen by Defendant Greene on June 29, 2016. At that time, Defendant Greene ordered another referral to an orthopedic foot specialist and prescribed additional medication for pain. *Id.* at 21-24. A year later, on June 26, 2017, Plaintiff requested a renewal of his pain medication. *Id.* at 13. The response indicated that Plaintiff had only been taking the medication 56 percent of the time and that it needed to be taken 80 percent of the time in order for renewals to continue. *Id.* The prescription was then renewed "for 1 month to see if you take it properly." *Id.* A few days later, on June 30, 2017, Plaintiff again requested a prescription renewal and he was given a pass to visit the clinic on July 3, 2017. *Id.* at 10. He appeared at the clinic, but left prior to being seen indicating that the prescription had already been renewed. *Id.* at 7. He also indicated that he did not want to be seen separately for the issues regarding his Achilles tendon, but that he had only described those issues in his previous request in order to get the prescription renewed. *Id.*

B. Exhaustion of Administrative Remedies

Defendants move for summary judgment alleging that Plaintiff failed to exhaust his administrative remedies and thus his claims should be dismissed. In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court subsequently reviewed the 1996 provisions regarding exhaustion and concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731 (2001).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court explained "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. Proper exhaustion is required, meaning that the prisoner must not only pursue all

3

available avenues of relief; he must also comply with all administrative deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89-95 (2006). Because exhaustion is an affirmative defense, Defendants, the parties moving for summary judgment, have the burden to demonstrate Plaintiff failed to exhaust available administrative remedies and are required to establish "beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment" in their favor. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

TDCJ procedure requires the filing of a Step One grievance within 15 days of the incident at issue. *See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004) (explaining TDCJ grievance procedure and reiterating that "a prisoner must pursue a grievance through both steps for it to be considered exhausted"). Defendants argue that Plaintiff's serious medical need at the Hughes Unit arose on the day of his transfer, March 9, 2016. Thus, according to Defendants, Plaintiff's failure to file a grievance by March 24, 2016, means that Plaintiff failed to exhaust his administrative remedies.

Defendants' argument ignores Plaintiff's previous actions. His serious medical need did not begin anew when he was transferred to the Hughes Unit. In fact, Plaintiff had previously filed a grievance while held at the Holliday Unit alleging that his serious medical need was not being adequately treated. Def. Ex. A (#26-2) at 2. The response to that grievance came only a few days before Plaintiff was transferred to the Hughes Unit. *Id.* Further, as soon as there was a discrete issue regarding Plaintiff's medical needs after his transfer to the Hughes Unit, on March 30, 2016, Plaintiff began the grievance process seeking to change his pain medication and seeking an update on his referral to a specialist. *Id.* at 34. Plaintiff followed up that request with a timely Step One grievance singed on April 10, 2016, complaining that he still had yet to see a doctor or have his pain

4

medication evaluated. Compl. (#1-8). Finally, Plaintiff's complaint involves allegations that he has suffered additional injuries as a result of Defendants' deliberate indifference to his medical needs. Plaintiff certainly could not be expected to know of his future injuries on the day he arrived at the Hughes Unit. Even presuming that Defendant properly exhausted his administrative remedies, however, his claims are denied on the merits, as discussed below.

### C. Eleventh Amendment Immunity

Pursuant to the Eleventh Amendment, federal courts are without jurisdiction over suits against a state unless that state has waived its sovereign immunity or Congress has clearly abrogated it. *Moore v. La. Bd. of Elementary and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). The Eleventh Amendment may not be evaded by suing state agencies or state employees in their official capacity because such an indirect pleading remains in essence a claim upon the state treasury. *Green v. State Bar of Texas*, 27 F.3d 1083,1087 (5th Cir. 1994). Being sued in their official capacities for monetary damages, Defendants are immune from suit under the Eleventh Amendment because such an action is the same as a suit against the sovereign. *Pennhurst State School Hosp. v. Halderman*, 465 U.S. 89 (1984).

### D. Supervisory Liability

Plaintiff fails to allege any personal involvement in his medical treatment by Defendant Armstrong. To the extent Plaintiff is asserting Defendant Armstrong is liable due to his supervisory position that claim is dismissed. Supervisory officials cannot be held vicariously liable in § 1983 cases solely on the basis of their employer-employee relationship. *Monell v. Department of Social Services*, 436 U.S. 658, 693 (1978); *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). If a supervisor is not personally involved in the alleged constitutional deprivation, he may be held liable

5

only if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). In order to demonstrate a causal connection, the supervisor would have to "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.* at 304. Plaintiff identifies no such policies and makes no allegations that Defendant Armstrong was personally involved.

   E.  No Constitutional Violation

  Furthermore, Plaintiff has not presented any facts which would arise to the level of a constitutional violation. Plaintiff's main allegation is that he was dissatisfied that Defendant Green did not see him until Plaintiff had been at the Hughes Unit for over three months. Plaintiff claims Defendants have been deliberately indifferent to his medical needs and that the failure to treat his injury differently has led to further injury.

  "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

  Claims of inadvertent failure to provide medical care or negligent diagnosis are insufficient to state a claim of inadequate medical care. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Similarly, unsuccessful medical treatment or disagreement between an inmate and his doctor concerning the

manner of treatment does not give rise to a cause of action. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). In short, a claim of medical malpractice does not amount to a constitutional violation merely because the plaintiff is a prisoner. *Id.* at 106. Deliberate indifference may also be shown by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.* at 104-05. In order to maintain a claim for delayed medical treatment there must have been deliberate indifference which results in harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).

Plaintiff has not sufficiently alleged Defendants were deliberately indifferent to his serious medical needs. The problem with Plaintiff's claim is that he ignores the nearly two years that passed from the time of his Achilles injury until his admission to TDCJ. Plaintiff can point to no facts indicating that any further injuries were the result of a three-month delay before being seen at the Hughes Unit, as opposed to the two years that passed without treatment. In addition, Defendants did provide Plaintiff with adequate medical treatment. From the time of Plaintiff's initial examination at the Holliday Unit, Plaintiff's injury history and medications have been reviewed on several occasions. Plaintiff has continually sought surgery to repair his injury. Plaintiff's medical caregivers, however, have indicated that surgery was not required. Instead, Defendants have opted to prescribe medication for pain and given Plaintiff medical restrictions to prevent further injury. Plaintiff's complaint, therefore, amounts to a disagreement in treatment. He believes he should have surgery and does not agree with Defendants' treatment plan. This does not state a constitutional violation.

## CONCLUSION

It is therefore **ORDERED** that Defendants Green, Marcum, Pollard, Smith, and Whitt's Motion for Summary Judgment (#20) and Defendant Armstrong's Motions for Summary Judgment (#21, 27) are **GRANTED.**

**SIGNED** on January 11, 2018.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE